UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AURORA ROSASCO,[1]          )     No.  CV 05-1939-PJW
                            )
          Plaintiff,        )
     v.                     )     MEMORANDUM OPINION AND ORDER
                            )
JO ANNE B. BARNHART,        )
Commissioner of the Social )
Security Administration,    )
                            )
          Defendant.        )
_____)

I.

INTRODUCTION

   Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking reversal of the decision by Defendant Social Security Administration ("the Agency") denying her benefits.  Alternatively, she asks the Court to remand the case to the Agency for further proceedings.  After reviewing the record and for the reasons discussed below, the decision of the Agency is AFFIRMED, and this action is dismissed with prejudice.

_____

   [1]  Plaintiff is also known as Susan Gordillo.  (AR 230, 309.)

II.

SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff was, at the time of the most recent administrative hearing, a sixty-year-old former welder/assembler and child care attendant with a fourth grade education in Colombia.  (AR 237-39.) She filed an application for disability insurance benefits ("DIB") on July 21, 1994 (AR 37-39), alleging inability to work since September 29, 1993 (AR 37, 74), due to a lumbosacral sprain and L5-S1 disc space narrowing (AR 74).  She also alleged she had asthma.  (AR 234.) Following denials of her claims at the initial and reconsideration levels (AR 43-45A, 58-59), she requested a hearing before an Administrative Law Judge ("ALJ") (AR 64-65).

Following a hearing on November 14, 1996 (AR 24-36), the ALJ denied Plaintiff's claim by decision dated January 17, 1997 (AR 17-20).  Plaintiff requested review by the Appeals Council, which request was denied.  (AR 4-8.)  Plaintiff then filed suit in this Court. While this case was pending, the parties stipulated to a remand, and the case was sent back to the Agency.  (AR 190-93.)

On July 26, 1999, the ALJ held a second administrative hearing. Plaintiff again appeared with counsel and testified, as did a vocational expert.  (AR 175-89).  The ALJ again denied benefits.  (AR 159-68.)  Plaintiff's request that the Appeals Council review the ALJ's decision was denied.  (AR 150-51.)  Plaintiff again filed a complaint in this Court.  The matter was again remanded (AR 255-72), and the prior decision was vacated (AR 273-74).  The district court's remand order called for a new credibility finding and clarification of Plaintiff's residual functional capacity.  The Agency was also instructed that the views of consultative internist, Dr. Ghulam A.

2

Jafferi, that Plaintiff "should avoid environments with dust, smoke or sudden changes in temperature," should be incorporated into any decision.  (AR 115, 271.)  A third hearing was held on October 28, 2003, before a new ALJ at which time Plaintiff again appeared with counsel and testified.  A vocational expert also testified.  (AR 229-54.)

By decision dated December 11, 2003, Plaintiff's application for benefits was denied a third time.  (AR 220-25.)  At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity during the period between her alleged onset date of September 29, 1993, and her date last insured of September 30, 1997.  However, he found that Plaintiff had engaged in substantial gainful activity thereafter.  (AR 224.)  At step two, the ALJ found that Plaintiff suffers from severe impairments, consisting of degenerative joint disease and asthma.  (AR 222.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one of the "Listings."  (AR 224.)  The ALJ also found that Plaintiff's allegations were not entirely credible, and determined that Plaintiff retained the residual functional capacity to lift ten pounds frequently and twenty pounds occasionally, to stand and/or walk six hours of an eight-hour workday, and to sit six hours in an eight-hour workday.  Additionally, he found that Plaintiff was unable to work in environments with "excessive respiratory irritants, such as fumes, dusts, and gases."  (AR 223.)

The ALJ concluded that Plaintiff's past relevant work as a welder/assembler did not require the performance of work-related activities precluded by her residual functional capacity. Accordingly, he determined that Plaintiff could perform her past

relevant work and that she was, therefore, not under a "disability" as defined in the Social Security Act at any time through the date of the decision.  Plaintiff's request that the Appeals Council review the ALJ's decision was denied, making the decision of the ALJ the final decision of the Agency.  (AR 204-06.)  Plaintiff then filed a complaint in this Court.

III.

ANALYSIS

A.   <u>Standard of Review</u>

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).)  It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

4

1   599 (9th Cir. 1999).  Indeed, if the record evidence can reasonably

2   support either affirming or reversing the Agency's decision, this

3   Court must not substitute its judgment for that of the ALJ.  *See*

4   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the ALJ

5   committed error but the error was harmless, reversal is not required.

6   *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th

7   Cir. 2004)(applying the harmless error standard).

8   B.   Discussion

9        In this appeal, Plaintiff contends that the ALJ's findings

10  concerning Plaintiff's environmental limitations do not comport with

11  the order of this Court that the limitations outlined by Dr. Jafferi

12  should be credited.  She also argues that the ALJ's finding that

13  Plaintiff was not totally credible is not based on substantial

14  evidence.  For the reasons set forth below, Plaintiff's claims are

15  rejected.

16       1.   The Environmental Limitations

17       The ALJ concluded that Plaintiff should avoid exposure to

18  "excessive respiratory irritants," but that her ability to perform her

19  past work as a welder/assembler was not impacted by this limitation.

20  Plaintiff contends that the ALJ's finding that Plaintiff was only

21  restricted from exposure to "excessive respiratory irritants" ignored

22  this Court's remand instructions (in the second remand) that the

23  Agency include a limitation for environmental conditions consistent

24  with Dr. Jafferi's views.  The Court disagrees.

25       In November 1994, Dr. Jafferi, a consulting, examining physician,

26  opined that Plaintiff "should avoid environments with dust, smoke, or

27  sudden changes in temperature."  (AR 115.)  In the first decision, in

28  1997, the ALJ noted this limitation and included a restriction for

5

"concentrated exposure to dusts, smoke, extreme changes in temperature and similar conditions." (AR 267-68.) In his second decision, in 1999, the ALJ did not include this restriction. As a result, after the second decision, the case was remanded to the Agency, in part, so that the ALJ could include that limitation in his third decision. Plaintiff complains here that the ALJ merely ignored the Court, or worse, when it concluded in the third decision that Plaintiff was only restricted from working in an environment with "excessive" respiratory irritants, as opposed to one with any respiratory irritants. This contention is without merit.

Plaintiff raises a valid point when she complains that the ALJ failed to simply include the limitations found by Dr. Jafferi when establishing Plaintiff's residual functional capacity in this third decision by the Agency. But the ALJ's failure to do so does not render the decision fatally flawed. Assuming the ALJ had simply adopted Dr. Jafferi's language--that Plaintiff should "avoid environments with dust, smoke or sudden changes in temperature"--he would have still concluded that Plaintiff could perform her past relevant work. The Dictionary of Occupational Titles ("DOT") indicates that there are no environmental factors affecting the performance of Plaintiff's former job, except some noise. *See* DOT 726.684-090.[2] The vocational expert at the third hearing testified that Plaintiff's former job is usually performed in a "very clean manufacturing environment." (AR 246-47.) Though she acknowledged that there is a chance of exposure to a little bit of smoke and dust,

---

[2] "The DOT is 'the Secretary's primary source of reliable job information.'" *Johnson v. Shalala*, 60 F.3d 1428, 1434 n. 6 (9th Cir. 1995), *quoting Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1980).

1  she did not feel that this would preclude Plaintiff from performing

2  this job.  (AR 251.)  The Court agrees.  Because it appears clear that

3  Plaintiff could perform her past work as a welder/assembler despite

4  her need to be free from "environments with dust, smoke or sudden

5  changes in temperature" (AR 115), the ALJ's decision will not be

6  disturbed.

7       2.   The ALJ's Credibility Finding

8       The ALJ found that Plaintiff's claim that she could not work due

9  to her ailments was not entirely credible.  Plaintiff argues that this

10  finding was erroneous and asks the Court to overturn it.  The Court

11  declines to do so.

12       "Credibility determinations are the province of the ALJ." *Fair*

13  *v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  An ALJ may reject a

14  claimant's testimony as not credible by specifically identifying the

15  incredible testimony and by identifying the evidence that undermines

16  that testimony. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

17  1996).  As long as substantial evidence in the record supports the

18  ALJ's credibility finding, this Court may not second-guess it. *See*

19  *Morgan*, 169 F.3d at 600.  The Court will not reverse an ALJ's

20  credibility determination based on contradictory or ambiguous

21  evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

22       Once Plaintiff has established by objective and clinical evidence

23  that she has an underlying impairment which may reasonably account for

24  the symptoms alleged, although not necessarily the degree of symptoms

25  alleged, the ALJ may not reject her subjective allegations, in the

26  absence of affirmative evidence of malingering, without providing

27  clear and convincing reasons for doing so. *Batson v. Commissioner of*

28  *the Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir.

7

1   2004).   In finding Plaintiff's symptom complaints not entirely
2   credible, the ALJ cited the updated record reflecting that Plaintiff
3   worked as a child care attendant subsequent to her alleged onset date.
4   He further noted that this job required "exertion in excess of her
5   past relevant work as a welder/assembler, a circumstance that casts a
6   measure of doubt upon her allegations of disabling pain and impairment
7   throughout the period at issue."  (AR 223, 243.)

8       Plaintiff argues first that this finding "is both lacking in
9   factual foundation and inherently illogical."  (Joint Stip. at 16.)
10  She contends that her own testimony was "insufficiently specific to
11  give an accurate picture of the exertional and non-exertional
12  requirements of what she actually did" during the eight hours a day
13  that she worked.  (Joint Stip. at 16.)

14      Plaintiff's argument is not persuasive.  Plaintiff testified that
15  between 1999 and 2001 she worked five days a week, eight hours a day,
16  caring for a young child who was approximately one-year-old when she
17  started working and three-years-old when she stopped.  (AR 240.)  When
18  asked whether she fed the child, changed the child, cleaned the child
19  and did "everything," Plaintiff's only response was that the child's
20  father dressed the child and had breakfast ready when Plaintiff
21  arrived.  (AR 240-41.)  Presumably, then, Plaintiff, in fact, fed,
22  changed, and cleaned the child during the day, among other things.  If
23  Plaintiff's testimony was not sufficiently specific to fill in the
24  details, it was due to her lack of response to the ALJ's question, not
25  anything the ALJ did.  This is particularly relevant because it is
26  Plaintiff who bears the burden of proving disability.  *Mayes*, 276 F.3d
27  at 459.

28

1    Absent any indication that she did not perform the usual duties
2    of a child care attendant or that she received special consideration,
3    the ALJ was entitled to infer from the evidence that, as a child care
4    worker, Plaintiff had to exert significantly more effort than she did
5    as a welder/assembler. *See Sample v. Schweiker*, 694 F.2d 639, 642
6    (9th Cir. 1982)(noting that an ALJ "is entitled to draw inferences
7    logically flowing from the evidence").  Plaintiff described the job of
8    welder/assembler as one requiring mostly sitting, no bending, and no
9    lifting (AR 223), i.e., it is sedentary work.  On the other hand,
10   according to the vocational expert and the DOT, the job of child care
11   worker is "medium work."[3]  (AR 243.)

12   Plaintiff next argues that "there is an unwarranted leap in logic
13   between working a full-time job [from 1999-2001] and the notion that
14   this work must adversely affect the credibility of her claim
15   'throughout the period at issue.'" (Joint Stip. at 17.)  Plaintiff
16   contends that she became disabled in September 1993, and that a return
17   to full-time work more than five years later "at an unspecified level
18   of exertion" "does not logically impact the credibility of her claim
19   that she became disabled for the entire period commencing in September
20   of 1993." (Joint Stip. at 17.)  The record does not support
21   Plaintiff's contention.

22   Plaintiff repeatedly maintained throughout the course of these
23   proceedings that her condition was worsening.  (AR 34, 178, 233.)
24   This was true even at the July 1999 hearing.  (AR 178.)  But she never
25   explained how she could perform medium work as a child care provider

26   _____

27        [3]  "Medium work" is defined as work which "involves lifting no
     more than 50 pounds at a time with frequent lifting or carrying of
28   objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

9

1    in 1999, 2000, and 2001, when her condition had deteriorated, and

2    could not perform the lesser demanding sedentary job of a

3    welder/assembler after 1993.

4         Portions of Plaintiff's own testimony further suggest that the

5    reason she was not working was not because of disability, as she

6    claimed, but rather because of her age and the labor market.  The

7    reason she stopped working in the first place was because she was laid

8    off, not because she was disabled.  (AR 27-28.)  Although she looked

9    for work after being laid off, she could not find the same type of

10   work and stopped looking.  (AR 27-28.)  At the most recent hearing,

11   Plaintiff was asked whether there was anything else that she wished

12   the ALJ to consider in assessing her disability.  Plaintiff responded:

13        Yes, also I can't see very well.  And also I look at my age.

14        I'm going to be 60 years old, and I don't have any

15        insurance, medical insurance and I get desperate because of

16        this.  I'd like to go and get a job but I have gone through

17        offices to look for a job but as soon as they see my age

18        they will never call me . . . .

19   (AR 237.)

20        Substantial evidence, therefore, supports the ALJ's finding

21   concerning the impact of Plaintiff's employment from 1999 through 2001

22   on her credibility throughout the entire period at issue.  In addition

23   to Plaintiff's work from 1999-2001, the ALJ cited other reasons for

24   finding Plaintiff not credible.  (Joint Stipulation at 20.)  He noted,

25   for example, that Plaintiff's treatment had been fleeting and

26   conservative.  (AR 222.)  This is a proper factor for the ALJ to

27   consider when assessing credibility.  *See Fair v. Bowen*, 885 F.2d 597,

28   604 (9th Cir. 1989)("[R]ather minimal conservative treatment" is a

valid consideration in assessing the credibility of symptom complaints).  He also noted that pulmonary function studies were normal.  (AR 222, 325.)  This, too, is a valid factor for the ALJ to consider.  *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (finding that although the lack of objective findings cannot be the sole reason to reject allegations of the severity of subjective symptoms, it is, nevertheless, one of the valid factors to be considered.)

Thus, the reasons cited by the ALJ for rejecting Plaintiff's allegations concerning the severity of her complaints--i.e., she was able to work in a more demanding job even though her condition was worsening, she underwent only minimal conservative treatment, and her medical tests did not support the extent of her claims--are clear, convincing reasons, supported by substantial evidence in the record. For this reason, the ALJ's credibility finding will not be disturbed.

VIII.

CONCLUSION

For the reasons set forth above, this Court finds that the Agency's findings are supported by substantial evidence and are free from material legal error.  Therefore, the Court affirms the decision of the Agency and enters summary judgment in favor of the Agency and against Plaintiff.

IT IS SO ORDERED.

DATED:  June   23   , 2006.


_____/s/_____

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\ROSASCO\Memo Opinion.wpd

11